UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

LISA A. CHIESA,

                        Plaintiff,

    v.

                                1:06-CV-1549-DNH-DRH

NEW YORK STATE DEPARTMENT OF LABOR;
BOB CLARK; CELIA HAMBLIN; DEBRA O'BRIEN
JORDAN; and MICHAEL BLOSS,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                  OF COUNSEL:

DELORENZO LAW FIRM, LLP             THOMAS E. DeLORENZO, ESQ.
Attorneys for Plaintiff
201 Nott Terrace
Schenectady, New York 12307

HON. ANDREW M. CUOMO                DEAN J. HIGGINS, ESQ.
Attorney General of the                    JEFFREY P. MANS, ESQ.
  State of New York                         Assts. Attorney General
Attorney for Defendants
Department of Law
The Capitol
Albany, New York 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Plaintiff Lisa Chiesa ("plaintiff" or "Chiesa") commenced suit against her former employer, the New York State Department of Labor ("DOL"), and several employees within the DOL: Bob Clark, Celia Hamblin, Debra O'Brien Jordan, and Michael Bloss (collectively "defendants"), on December 22, 2006. She brought claims under the Americans with

Disabilities Act ("ADA"), the Civil Rights Act of 1964 ("Title VII"), and the New York State Human Rights Law. All claims related to alleged discrimination during her employment at the DOL.

Defendants moved for summary judgment on October 16, 2008. Plaintiff opposed. Oral arguments were heard January 9, 2009, in Utica, New York. Decision was reserved.

## II. FACTS

Chiesa began working as a Keyboard Specialist for the DOL on November 15, 2001. During her employment, she had Reactive Airways Dysfunction Syndrome ("RADS") and chemical sensitivity. Both are toxic inhalation injuries. Symptoms of RADS include recurrent coughing, occasional shortness of breath or infections, and irregular need for an inhaler and medications. RADS is permanent but lessened somewhat through medication. Plaintiff began seeing two doctors soon after developing RADS. She continues to see one doctor once a year, and did not give the frequency of appointments with the second doctor. During her employment with the DOL, plaintiff met with her doctors as needed. The defendants allowed her the time off for appointments without adverse consequences.

Plaintiff started applying for promotions in 2002. Her employer granted her one interview during the time she sought promotion. During that interview, in 2004, defendant Michael Bloss ("Bloss"), the assistant director for the Information Technology department, indicated she did not receive the promotion because supervisors and administrators believed her disability made her lose her mental faculties. Bloss filled the position with a different person. Plaintiff also alleges that defendant Bob Clark ("Clark"), the director of Information Technology, told her choosing to come to work while coughing so much was a

bad idea and that the coughing made him doubt her ability to perform her work responsibilities.  Bloss and Clark deny making the statements.

After her interview with Bloss, Chiesa filed an internal complaint against Clark and Bloss with a division of the state, referred to variously as the Division of Equal Opportunity Development ("DEOD"), Equal Employment Opportunity ("EEO"), and the Equal Employment Opportunity Commission ("EEOC") in the record.  The complaint resulted in mediation and an order that Clark provide a positive letter of reference for plaintiff.

Typically, when a position becomes vacant within the state, the position is designated as competitive or noncompetitive.  That designation is a partial indicator of what criteria will be looked at to fill the position.  When an agency needs to fill a competitive position, it creates a profile of the skills the ideal candidate for the position would possess.  The Civil Service Department goes through its information and creates a list of current employees with the matching training and experience to the profile.  The candidates are often listed in order of the closest match to the ideal profile to the farthest match.  If the agency's profile looks at a test score, the candidates may be ordered from the highest score to the lowest.  When the Civil Service Department creates a list for an agency, the candidates' eligibility on the list is not necessarily permanent, nor is the list's validity.  In some instances, a person may need to wait a certain amount of time before being placed back on the list.  The expiration can also be beneficial.  By the time someone reapplies, the person may have improved on some skill in the profile and rank higher on the list.  Noncompetitive positions are filled by varying means.

During the spring of 2005, Clark suggested to Chiesa that she apply for a "55-b designation."  The name refers to a section of the New York Civil Service Law.  The

- 3 -

provision permits state agencies to fill a number of employment positions through non-competitive appointments with a preference for qualified disabled individuals. An individual's 55-b designation indicates to the hiring entity the person must be preferred over other applicants. The head of the Workers with Disabilities Program stated that the usual practice designates only entry level positions, though the text does not specifically indicate so. Plaintiff applied for the designation and received two letters from the Department of Civil Service pertaining to the application. The first letter, dated April 5, 2005, informed plaintiff that she qualified for the designation. The second letter, dated June 24, 2005, said the designation could not be used to seek anything other than an entry-level position. Since plaintiff already worked above entry level and was not seeking a new entry level position, she was declared ineligible for the 55-b designation.

Chiesa applied for the vacant position of Information Specialist 1, Grade 14 in the spring of 2005. However, the position was declared competitive, resulting in the compilation of a list of candidates for the job. Her application for 55-b designation had no impact under the new standards for listing candidates for the position. Defendants indicated her low test scores caused her not to be listed in the top 140 candidates. Chiesa filed two complaints with the EEOC after she realized her placement precluded her from the position.

Thereafter, federal funding changed and defendant Cecelia Hamblin ("Hamblin"), the Chief Information Officer at the DOL, eliminated approximately fifty-six positions in order to remain within the monetary allocation. She chose to eliminate the vacant Information Specialist position for which Chiesa had applied.

Plaintiff received notice of the right to sue as a result of the EEOC complaints and as previously noted now alleges violations of the Americans with Disabilities Act, Title VII, and the New York State Human Rights Law.  She also alleges discrimination and retaliation after she exercised her protected right of filing a complaint.

### III. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law.  FED. R. CIV. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).  The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact.  FED. R. CIV. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986).  Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356.  At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56; Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.  To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant.  Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

**IV. DISCUSSION**

Defendants present several arguments in support of their summary judgment motion. First, they contend no employment discrimination claims under the ADA can be brought against individuals. Second, they contend employment discrimination claims under the ADA cannot be brought against the state or a state agency. Third, they construe one of plaintiff's claims as employment-related but brought under a general provision of the ADA, and argue the general provision cannot be applied to employment. Fourth, defendants contend retaliation claims under the ADA cannot be brought against states, that plaintiff is not covered by the ADA, and that they established sufficient reasons for their employment decisions to defeat a prima facie claim.

**A. ADA Employment Claims Against Individuals**

Individuals cannot be sued in employment claims under Title VII. Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2002). In numerous instances, courts have also applied the holding to ADA employment claims. See, e.g., Garibaldi v. Anixter, Inc., 407 F. Supp. 2d 449, 450 (W.D.N.Y. 2006); Hallett v. New York State Dep't of Corr. Servs., 109 F. Supp. 2d 190, 199 (S.D.N.Y. 2000); Herzog v. McLane Northeast, Inc., 999 F. Supp. 274, 276 (N.D.N.Y. 1998). Additionally, the statutory definitions of "employer" in Title VII and the ADA are the same, so if the text of Title VII excludes individuals, the text of the ADA also excludes individuals. Harrison v. Indosuez, 6 F. Supp. 2d 224, 229 (S.D.N.Y. 1998). Plaintiff presents nothing to the contrary and therefore her claims against individual defendants will be dismissed.

### B. ADA Discrimination Claims Against a State or State Agency

#### 1. Title I: Employment

Private individuals cannot claim monetary damages against a state for violations of the ADA under Title I of the ADA.  Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 374, 121 S. Ct. 955, 967-68 (2001).  However, a private plaintiff can seek injunctive relief, and the United States can choose to enforce the ADA in court against a state.  Id. at 374 n.4, 121 S. Ct. at 968 n.4.  Neither party disputes that the DOL qualifies as the state under the ADA.  Chiesa's request for relief covers only monetary damages.  Because she is a private plaintiff seeking monetary damages against the state under Title I, her Title I claim must be dismissed.

#### 2. Title II: Services, Programs, Activities

Chiesa presents varying arguments for her claims brought under a section of the ADA, often called Title II, which bans discrimination against qualified but disabled persons from participating in services, programs, or activities, or from receiving benefits of the services provided by the state.  42 U.S.C. § 12132.  In her memorandum, plaintiff states she is not using Title II (Pl.'s Mem. at 6), but then appears to make an argument for the application of Title II, id. at 12-13.

States cannot be sued under Title II unless plaintiff's claim implicates a fundamental right.  Castells v. Fisher, No. 05 CV 4866(SJ), 2007 WL 1100850, *5 (E.D.N.Y. March 24, 2007).  Public employment is not a fundamental right.  United Bldg. and Const. Trades Council v. Camden, 465 U.S. 208, 219, 104 S. Ct. 1020, 1028 (1984).  Consequently, any Title II claim will be dismissed.

In the alternative, a claim of employment discrimination under Title II must fail because of the significant differences in the text between Title I and Title II. The regulations for Title II refer to general services and programs, but Title I refers to specific aspects of employment, such as hiring, the number of employees necessary to qualify as an employer, and promotions. 28 C.F.R. § 35.130 (2008), 29 C.F.R. § 1630.2 - .4 (2008). Given the specific steps taken by Congress to tailor Title I for employers, Title II is too generic for use against employers and is not intended for such use. See, e.g., Sworn v. W. N.Y. Children's Psychiatric Ctr., 269 F. Supp. 2d 152, 157 (W.D.N.Y. 2003) (holding that plaintiff cannot circumvent state's immunity under Title I by bringing employment discrimination claim under Title II); but see Winokur v. Office of Court Admin., 190 F. Supp. 2d 444, 449 (E.D.N.Y. 2002) (finding the Title II terms programs, services, and activities to cover all aspects of the entity and therefore ban discrimination without regard to context).

### 3. **Plaintiff's Coverage by the ADA**

An employment claim requires four elements: (1) the employer must be subject to the ADA, (2) plaintiff must be disabled within the meaning of the ADA, (3) plaintiff must be otherwise qualified to perform her job, and (4) plaintiff must have suffered an adverse action because of her disability. Jaques v. DiMarzio Inc., 386 F.3d 192, 198 (2d Cir. 2004).

The ADA defines disability as "(1) a physical or mental impairment[1] that substantially limits one or more of the major life activities[2] of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102.  Under the ADA Amendments Act of 2008, standards of "significant restriction" or similar raised standards may not be used when determining the existence of a disability.[3] The ADA text says only "substantial limitations".  ADA Amendments Act of 2008, Pub. L. No. 110-325, § 2(a)-(b)(5), 122 Stat. 3553, 3554 (2008); 42 U.S.C. § 12102.  The C.F.R. contains a definition of substantial limitations: "(1) unable to perform a major life activity that the average person in the general population can perform; or (2) significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2 (j).

While defendants argue as to all three prongs, plaintiff only argues she is disabled under the record of disability and the regarded as disabled prongs.  In the light most favorable to the nonmoving plaintiff, she presents enough facts to possibly show a record

---

[1]  The Code of Federal Regulations defines a physical or mental impairment as "any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2.

[2]  The C.F.R. defines major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working" 29 C.F.R. § 1630.2.

[3]  Defendants relied on Toyota Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 196-97, 122 S. Ct. 681, 691 (2002).  However, the ADA Amendments Act of 2008, Pub. L. No. 110-325, § 2(a)-(b)(5) explicitly rejected the standard announced in Toyota Mfg., adopting the standard set forth in Sch. Bd. of Nassau County v. Arline, 480 U.S. 273 279-80, 107 S. Ct. 1123, 1126-27 (1987).  See 29 C.F.R. § 1630.2 (2008) (replicating the standard set forth in Arline).

of impairment. Defendant Bloss told plaintiff that she was stigmatized at the DOL, he believed she lost her faculties due to her disability, and he hired someone over her because of her disability. He may have believed plaintiff's past work and history at the DOL was indicative of problems she had because of her disability.

As to the regarded as disabled prong, plaintiff presents several statements tending to establish enough facts for her to possibly qualify as disabled under that prong. "[R]egarded as having" means the person may or may not actually have an impairment but "is treated by a covered entity as having a substantially limiting impairment." Id. § 1630.2(l). The employer must regard the employee as disabled within the meaning of the ADA. Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 646 (2d Cir. 1998). Consequently, the employers still must see the employee as substantially impaired in a major life activity.

Although Chiesa did not state which major life activity she believed RADS impaired, the two possibilities are breathing or working. The only accommodations for her work situation were permission to take time off for doctors' appointments, permission to leave work if ill, and permission to take medication as necessary during work. Plaintiff admitted that with or without those accommodations, her disability did not impair her work. It is less clear whether her ability to breathe impairs her ability to work. She coughs often, sometimes has shortness of breath or infections, needs medication, and uses an inhaler. She sees one of her doctors in person only once a year, but she did not give the frequency of her visits to the other doctor. Her infections and shortness of breath seem remedied by medication and her inhaler. She may cough often, but the effects of coughing seem controlled. Plaintiff's discussions in 2004 with defendant Bloss show he

and others stigmatized plaintiff, they believed she had lost her ability to work because of her condition, and they hired a different person for a job after plaintiff interviewed because she had RADS. Her conversation with defendant Clark shows he believed she was unable to accomplish all her job's tasks. Plaintiff adduced evidence that Bloss and Clark thought her ability to work was impaired by RADS, meaning they regarded plaintiff as disabled within the meaning of the ADA, which, if true, would be sufficient to qualify plaintiff as disabled under the ADA.

Thus, Chiesa has presented enough evidence to create a question of fact as to whether she is disabled under the ADA by the record of impairment and regarded as disabled prongs of the test. Again, her direct discrimination claims fail because the state is immune from such claims for monetary damages. Therefore, plaintiff's only remaining claim under the ADA is for retaliation.

### C. ADA Retaliation Claims

Currently, the applicability of each ADA title to states is decided case-by-case, but should the retaliation provision (sometimes called Title V) abrogate a state's immunity, complainants still must prove they engaged in protected activity and that retaliation (as defined in the statute) occurred because of the protected activity.

#### 1. Sovereign Immunity and Title V

State immunity or liability under each title of the ADA is decided title by title, as a claim using each title arises. United States v. Georgia, 546 U.S. 151, 159, 126 S. Ct. 877, 882 (2006). Immunity under Title V has not yet been decided, but the past decisions on state employers suggest very limited liability to be appropriate. To mirror the decisions on liability under Titles I and II, a state employer could only be sued for retaliation when a

fundamental right was implicated, plaintiff sought injunctive relief, or the United States brought the suit. Applying the Title I and Title II conditions on liability to Title V ensures state employers receive the degree of protection Congress intended. If a state is immune from underlying discrimination, then it follows that the state must be immune from claims alleging retaliation for protesting against discrimination.

Chiesa cannot overcome DOL sovereign immunity in her Title V retaliation claim. Consequently, that claim must also be dismissed.

### 2. Prima Facie Retaliation Claim

In the alternative, even if plaintiff could overcome sovereign immunity under Title V, she still cannot meet the burden for a prima facie retaliation claim. A prima facie retaliation claim under the ADA requires four elements: (1) that the plaintiff engaged in activity protected by the ADA, (2) the employer must be aware of that activity, (3) the employer must have taken adverse employment action against the plaintiff, and (4) and there must be a causal connection between the alleged adverse action and the protected activity. Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002). Plaintiff must show "a reasonable employee would have found the challenged action materially adverse." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006).

The elements at issue are whether adverse employment action occurred and whether there was a causal connection between any adverse action and the protected activity. Plaintiff's protected action, of which the DOL was aware, was filing internal complaints.

Possible adverse actions taken against Chiesa include failure to promote and elimination of the position she sought but was denied. Failure to promote can only cover

the time period after plaintiff filed the first complaint, around the time she started the 55-b designation process and continuing until the elimination of the Information Specialist position. That position appears to be the only one plaintiff sought after filing the first complaint. She claims New York Civil Service Law section 52 leaves flexibility in determining advancement, which may be true, but plaintiff's specific situation must be considered. On the list of candidates with the top scores on the test for the Information Specialist position, her name is not among the 140 listed. She scored below the top 140 candidates, and therefore was not eligible, because the position was never designated a 55-b position. Plaintiff's interpretation of section 52 would permit the hiring body to skip over all 140 names on the list and hire her instead. More logical is that the flexibility provided in the section 52 would permit consideration of senior (or experienced or well-performing) employees on the score list even if they were not ranked in the very top. Under this interpretation, defendants presented evidence showing no issue of material fact. At least 140 people had a higher score than plaintiff. Plaintiff presents no evidence showing she had stronger qualifications than the candidates who had the top 140 scores. She does not successfully show pretext in defendants' reasoning. There can be no failure to promote when the person could not be considered for the promotion

     As for elimination of the position, the parties agree that the Information Specialist position was not eliminated until after the agency determined plaintiff could not be hired for the position based on her rank among the list of candidates. She presents no arguments explaining how elimination of a position she could not have filled constitutes adverse action against her. She admits that once she was not hired, she began training to reach a higher score on the test for the position, but she apparently has not completed enough

training to attain a better score.  Again, defendants showed the absence of genuine issues of material fact.  The DOL adduced evidence that it eliminated the position because of budgetary changes.  Plaintiff has set forth no evidence to the contrary, or shown that the reason was pretext for discriminatory behavior.  The elimination of the Information Specialist position was not an adverse employment action. Without any adverse action, plaintiff has no retaliation claim.

### D. Title VII Claim

Title VII states employers cannot discriminate against individuals because of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2.  The record in the instant case pertains only to disability.  While Chiesa correctly states Title VII prohibits numerous forms of employment discrimination, the discrimination must be caused by one of the characteristics mentioned in § 2000e-2.  Plaintiff presents no facts pertaining to any of the mentioned characteristics, creating no issue of fact.  The claim will be dismissed.

### E. NY Human Rights Law Claim

Under 28 U.S.C. § 1367, a federal court can hear state law claims that arise out of the same case or controversy as the federal claims.  Exercising supplemental jurisdiction is not required.  Rather, a district court may dismiss a state law claim if the court dismissed the federal claims, among other reasons.  Id. § 1367(c);  United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139 (1966).  Because all the federal law claims are dismissed, supplemental jurisdiction will be declined and the state claim will be dismissed without prejudice.

IV. **CONCLUSION**

The ADA claims against individual defendants are not permitted as a matter of law and must be dismissed. The New York State Department of Labor is immune from ADA suits for monetary damages under Titles I, II, and V. The retaliation claim also fails because Chiesa adduced no evidence showing adverse action taken against her after she engaged in protected activity. Plaintiff's Title VII claim must be dismissed because plaintiff adduces no evidence showing her membership in a class protected by Title VII. Finally, supplemental jurisdiction over plaintiff's state law claims is declined.

Accordingly, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED;

2. The federal claims are DISMISSED; and

3. The state law claims are DISMISSED without prejudice.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated:   July 31, 2009
         Utica, New York.